Appellant case 17-5893, the United States of America v. William Hines. Oral argument not to exceed 15 minutes per side. Ms. Harris for the appellant. Good morning and may it please the court. Amanda Harris on behalf of the United States. I'd like to reserve 4 minutes for rebuttal. The district court here erred for two reasons. First, it required an unreasonable standard to establish the credibility of the confidential informants, which is not supported by the law, and which led the court to erroneously hold that the affidavit did not show probable cause. Second, it erred by holding that the good faith exception is inapplicable when the affidavit is also an executing officer of the search warrant. Here, there is no dispute that CS1 and CS2 provided a nexus between Hines' home and evidence of drug trafficking. The only question is whether State Court Judge Chauvin had a substantial basis for relying on the information from CS1 and CS2. And the answer is yes. First, CS1, who was known to the affiant and who was described as reliable, had previously provided information that Hines was selling a large amount of heroin in his home, and that tip was corroborated by other information in the affidavit. Including Mr. Rodriguez's 2015 admission that he had been giving Hines kilogram quantities of heroin and cocaine. Second, just as the officers did in Gates, officers here confirmed CS2's predictions that Hines would meet CS2 at the Legends Nightclub to discuss a drug deal by following Hines from his house to the Legends Nightclub. And by observing his suspicious driving, which was consistent with a drug trafficker who was concerned about being followed on his way to discuss a drug deal. The police also followed up with CS2 after the nightclub meeting to confirm the conversation between CS2 and Mr. Hines. And CS2 again confirmed with another opportunity for the affiant to assess CS2's credibility that Hines wanted CS2 to come to Hines' home to discuss a shipment of heroin the following day, which was the day the warrant was executed. Third, both CS1 and CS2 had a strong basis of knowledge because they had firsthand knowledge that Hines was trafficking drugs out of his home. CS1 saw heroin inside the home, and CS2 had previously seen heroin inside the home and had discussed a shipment of heroin with Hines that Hines wanted him to receive at Hines' home on the following day. And finally here, your honors, the officers obtained two independent sources that were consistent with one another prior to getting a warrant. Both informants' tips provided important information that corroborated each other, corroborated Mr. Hines, Hines' home, and evidence of drug trafficking. But in any event, even if the question of probable cause were a close one, which it is not, the district court erred here in declining to apply the good faith exception to the exclusionary rule. And it erred in at least three ways. First, I think as Mr. Hines agrees, this court in Kennison has directly rejected the broad proposition that the good faith exception is unavailable simply because the affiant is also an executing officer. Second, the affidavit was not bare bones because the information in the affidavit easily clears the lower hurdle that was provided by this court's decision in Carpenter because both CS1 and CS2 had provided a nexus between the place to be searched and the items to be seized. And finally, this court has repeatedly applied the good faith exception under similar circumstances. In page 31 of our opening brief, we cite a host of cases with perhaps less indicia of the informant's credibility in which this court has still applied the good faith exception. Are there any courts that have said that the good faith exception cannot apply when it is the same officer who's the affiant and the officer executing the search? I'm not aware of any, Your Honor, on a bare bones ground. That may come into play if, for example, like in the Supreme Court case in Shepard where the problem with the warrant was that it was facially deficient. And I think in Shepard, the officer had gotten assurances that, and had spoken with the magistrate about fixing those deficiencies, and so the court said, okay, that's okay under those circumstances. And it was relevant if those assurances had not been made because of the facial deficiency, it may have been relevant. But under a bare bones analysis, sort of that third part from Leon, I'm not aware of a court which has said that that makes a difference. If the court has no further questions, I'd like to reserve the four minutes for rebuttal. Thank you. May it please the court, Your Honors, Ms. Harris. Good morning, and I'm very pleased to be here, Mike Mazzoli, on behalf of the appellee and the defendant, Mr. William Hines. I'll begin by emphasizing the thing that I think is the most important about this case, and really the determinative factor in the appeal, and that is the standard of review. Because while it is for this court to apply its own reasoning and its own thinking in terms of the law, how the law applies to the facts, the court's rules are that it will not stitch together a factual picture of its own. It takes the factual picture provided by the district court and will use those facts unless they are clearly erroneous. And probably the best... Doesn't that court need to defer to the magistrate's assessment? Your Honor, I believe that that comes in in the legal standard, because the legal standard, when you three judges are trying to decide, is there a substantial basis for the magistrate's decision? You would not be asking, was the magistrate right in his... We're only looking at whether that judgment is arbitrarily exercised in the totality of the circumstances, right? Yes. All right? Yes. What do you say contrary to that? I would say that the fact, the law is to be applied to the facts as the district court found them. The district court defers to the magistrate, just as this court will defer to the magistrate, in the legal standard and say, these facts, do they provide a substantial basis for the magistrate to do as he did? Was the magistrate right? I'm a little perplexed when you start out this way, talking about the question of how we review facts, because I didn't understand this to turn on a dispute over facts. I thought the question was, the affidavit is what it is. It says what it says about reliability. The question as to whether that's adequate is a legal question, not a factual question. True, Your Honor, but... So how does the standard of review help you here? Well, in the clear error standard, it is not just the facts that the district court finds, but the inferences that the district court draws, the weight that the district court applies to the facts. And the definition that I think is the most useful is from this court in the Monsivais case, 401-Fed 3755, where there are two permissible views of the same fact. A fact finder's choice between those permissible views cannot be clearly erroneous. Who's the fact finder here in that sense, then? The issuing judge or the district court reviewing judge? The district court reviewing. This court has said that the district court's facts are to be accepted unless clearly erroneous. And for instance... So did the district judge here have a hearing and have testimony? Yes, Your Honor. So that's the set of facts that you're saying we should review under the clear error standard, as opposed to what does this affidavit actually say? Well, I would say what I had in mind, Your Honor, was actually that as the court expressed itself in its order, as it goes through the facts, it explains the varying weight that it gives different things. For instance, the fact that Mr. Hines was seen driving defensively on the way to the supposed encounter, the judge gave that very little weight. And although it can be given much more weight, and I think counsel for the United States has shown that it could be given a lot of weight. Did the judge even factor into that analysis right there that the erratic driving was on the way to a drug pickup? Well, yes. That's important. I didn't think the judge did. Yes, Your Honor. Erratic driving, he said, well, yeah. He didn't put it in the totality of the circumstances. Well, I think, Your Honor, that the judge essentially was saying that if he were driving to the grocery store and he saw people behind him that he thought might be the police tailing him, he would have done the same thing. That that is just the way that drug dealers, if that's what Mr. Hines is, that's what drug dealers do. Are we kind of putting the cart before the horse here? As I read this opinion, it says that the affidavit fails to meet the requirements in two ways. One is that the identities of the informants weren't provided to the magistrate, and there's no statement that either of the informants had provided reliable information in the past. Both of those are factually true. There's no fact dispute. There's no inferences. There's no everything else. He starts out saying that legally that makes this affidavit insufficient. So that's the first question that you have to get over. Why is that true? It doesn't seem to be true. Then secondly, he goes on to say in the face of that, then he looks for other corroborating evidence. That's where you get to the driving down the one-way street. And maybe we do or don't give deference to the significance of driving the wrong one way, but if he's wrong on the first one, he's wrong. That's true, but it is the clear error standard that applies to that finding. When he says that neither of these informants has ever given information to the officers that have ever been confirmed in the past, that is his finding of fact. And if it is clearly erroneous, if it is a totally impermissible view. He didn't make a finding that they had never given reliable information. He says the affidavit doesn't say whether they had or had not. That's an important distinction, I would think. But the important question here is, is there a case that says what the judge says? That if you don't give the identities and you don't flesh out why they've given reliable information, that that in and of itself is a go-no-go. No. I don't find a case that says that. There is no case that says that. There are plenty of cases the other way. Yes. Because we're supposed to look at this in the totality. Yes. So where does the judge do that? Well, I think that the judge applied the law to the facts as he found them. And I can defend that. I think really what I'd rather do is encourage you judges, because it's really for you to make this assessment as far as what the law says, whether the facts are enough to be a substantial basis for the magistrate to issue the warrant. Now I'm really confused. I thought you were starting out because you sensed you might have some problems here by resting on the standard of review and saying you should win because of the standard of review, not because of what the affidavit says. I should win because of the clear error part of the standard of review. Because the facts as the judge found them support the ruling that he made. And I would say to you three judges, the facts as the district court found them would support you in a determination that there was not a substantial basis in this warrant for a finding of probable cause. CS1, as far as the affidavit says, had said nothing to the police in the past except once in July 2012 when he said that there was drug dealing going on at the house. The police staked out the house. They saw Mr. Hines coming and going. Just as if they staked out my house, they would see me coming and going. They did not see lots of people making short trips, known drug buyers. They didn't have a control. They did not confirm the important part of CS1's assertion. They only confirmed that the man lived there, which Judge McKinley acknowledged that that is a finding of fact. Yes, he lives there, and yes, he's a known drug dealer. But that, in his view, and I think he's correct, but it's a legal question, in his view, that alone is not enough. And I would like to address a couple of the other issues as the district court found them. For instance, the first CS, CS1, says that he saw an amount of heroin, or she, in the house the day before. Now, that can be given a great deal of weight, but Judge McKinley did not. The fact finder gave that very little weight because he said there are insufficient details to make this useful, insufficient detail about the amount that CS1 saw, the location where CS1 saw it, the packaging, if there was packaging. It is quite possible, I mean, since all he said, the CS1, all CS1 said was that there's an amount there, that it could have been an amount for personal use. And the large amount that CS2 is claiming he's going to be getting at the house, CS2 hadn't seen a large amount of heroin at the house. It didn't say so. CS1 only said that he saw an amount, didn't say that it was an amount. I'm really curious, going back to your first point, that the amount is important to determine whether it's personal use. Is a personal use amount of heroin now legal? No. So all we're trying to determine here is probable cause. Even assuming that you're right, it was a small amount and not a large amount. What difference does that make? Well, to the extent that the claim is drug trafficking is their probable cause of drug trafficking, a small amount of heroin would not be. And that's only if CS1 is reliable. And that's where the judge said, I don't find enough to find this a reliable statement. We have a legion of cases, don't we, where the drug dealing is actually being done in some other location. You still get a search warrant to search the drug dealer's house to see if he's got drug records or scales or other indicia. You don't have to have any evidence that there is drugs in that particular spot. But there would have to be. Right? Well, you'd have to say that there's evidence. You'd have to have other evidence. Yes. But now we've moved one step further to the real goods. We've got a statement that there are drugs in that house. And then the second conformance says there's a large amount of drugs. They're going to do a deal for a large amount. Wouldn't a reasonable officer think that that's sufficient evidence? No, I think not. And I think that's where the good faith standard comes in. And I think that the reasonable officer, and this is sort of an unsophisticated way of thinking about it, but I imagine the ordinary police officer reading the affidavit and what does that officer say, what's his or her first response after it? If it is, well, this looks good to me, let's go, then the good faith exception would apply. However, I think that most officers would read that and their first response would be, how do we know these people are telling us the truth? Has CS1 ever given us anything that we actually saw pan out? They are trained. These police officers are trained, and they've all been burned by faithless, lying, confidential informants. Corroboration is as important to the police officers as it is to any judge. And I think the police officer's first response would be, there's not enough here. What is your best case to support that even the good faith exception wouldn't apply here? Your Honor, I can't say that I could match any case exactly to what we have here. There are numerous cases where, and Weaver is one that comes to mind, but others as ‑‑ Weaver was a bare bones situation. Exactly. You're saying this is a bare bones affidavit? No. I think what Weaver said was that a bare bones affidavit might be enough to carry the day in some circumstances. But I think what the court said was, in a sense, boilerplate or not, there's not enough corroboration here. The police officer should have spent more time corroborating any of this. And if the officer had, then what was there in the bare bones, I think the way the court phrased its finding, the court said that that would have been ‑‑ It said it's not bare bones, right? Right. And then you described it as bare bones. What do you think? Is it or isn't it? The Weaver ‑‑ Oh, Weaver. I'm sorry. You're talking about Weaver. No, my fault. Never mind. Could I ask you another question? And I'm sorry because I should know the answer to this, but we've had several sufficiency of the affidavit cases this week and they kind of sometimes run together. Did you concede in your brief that there was some reason that it was reasonable to believe that these police officers did know these informants even though they didn't say what their knowledge was? No, that would not be my ‑‑ That's not this case? No, sir. Thank you. How about on page 15 of your brief? It seems fair to assume that Detective Evans knew the identities of his two confidential sources and thus could conceivably track them down if they gave him false information, although it's noteworthy that in his affidavit he did not express a claim to know the informant's identities. I'm sorry, Your Honor. Yes, Detective Evans. I was thinking the good faith exception, the police officers who were actually reading, that did they know who CS1? Detective Evans did. At least it's very reasonable to assume that he did. Doesn't that obviate then a lot of the concern about somebody anonymously providing false information about somebody else? The whole idea is you know them and you can track them down if they've provided false information. It's better than nothing, but let me address that one thing in the half minute that I have left. CS1 said that he saw an amount of heroin in the house. Suppose that the police had gone into the house and found nothing. Suppose that CS1 was lying. There is no way in the world that that police or Detective Evans could go to a prosecutor and say I want you to prosecute this man for obstruction of justice because it would have been clear to everybody. All CS1 had to say was I didn't say that there was enough to be sold. I didn't say that you were going to find any the next day. I didn't say it was packaged. I didn't say any of that. I just said I saw an amount. So there would be no consequences, adverse consequences for CS1 except that having burned Detective Evans, he would never be used again, but that's why police officers care about corroborating people who they don't know already to be reliable. Your Honors, thank you very much for this opportunity. Thank you. I'd like to begin briefly addressing the standard of review with regard to the probable cause determination. This court and the Supreme Court have been clear that this court owes the issuing judges probable cause determination substantial deference, not the district court's conclusion. That's largely because there are no factual findings here. Well, didn't Detective Evans testify at a hearing in front of the district judge? Yes, Your Honor, he did. However, that was related to other allegations that, for example, there was a Franks violation alleged in the initial motions to suppress. So even though in other contexts some motions to suppress require the court to make factual findings, Franks is an easy example because the court will either find that there was information that was materially omitted or false in the affidavit itself, and that would be a factual finding that this court would review for clear error. However, when, as here, the sole question is whether there was a substantial basis for the issuing judge's probable cause determination, this court is really looking to the issuing judge's determination and not the district court's determination. This has been emphasized by the Supreme Court in terms of with regard to facts, for example, that may have different interpretations. Even most recently, although it wasn't a warrant case, it was a probable cause case. This court in Wesby, which was issued after the briefing in this case, made clear that reviewing courts are not supposed to tease out facts that could have an innocent explanation and consider them on their own, and instead this court should consider those facts under the totality of the circumstances. That's the problem with the evasive driving here. The district court teased out that fact and said it could just be consistent with Mr. Hines behaving like a drug dealer, but it was also equally consistent with CS2's report that Mr. Hines would meet him at the nightclub and had received a shipment of heroin, and so that evasive driving was consistent with the issuing judge's determination. Secondly, with regard to good faith, the standard of review that applies here is de novo review. That's a legal question. Again, there aren't factual findings because the question is whether a well-trained, objectively reasonable officer under the circumstances would have known that the warrant was not supported by probable cause. Again, we easily cleared that hurdle here. I would just leave you with, I think, the ultimate problem with regard to going back to probable cause, where the district court erred, was by taking a divide-and-conquer approach with regard to each of the facts listed. Although the district court's opinion does have a statement looking at the totality of the circumstances on pages 9 to 10, where the district court begins saying looking at the totality of the circumstances, lists five circumstances, and then ends saying the totality of the circumstances. So why isn't the district judge doing exactly what you say he should be doing? I think the court states the correct standard, but at the end he's really stating what the affidavit is lacking. And this court has been clear that that's not the question for a reviewing court. The question is what the warrant does contain. Gates makes that clear, and other cases in this court makes that clear. And here, there was a plethora of information that corroborated CS1 and CS2's reports, and which ultimately provided a strong nexus between the House and illegal activity. And for all of these reasons, Your Honor, we respectfully request that this court reverse the district court's decision. Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?